UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANNY SMITH,

                    Petitioner,                              Case No. 07-14762
                                                             Honorable David M. Lawson

v.

BARRY DAVIS,

                    Respondent.

_____/

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Danny Smith, presently confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, has filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254. The petitioner was convicted by a jury in the Oakland County, Michigan circuit court of assault with intent to rob while armed, Mich. Comp. Laws § 750.89, assault with intent to murder, Mich. Comp. Laws § 750.83, and two counts of possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b. Defendant was sentenced to eighteen to forty years imprisonment for the assault convictions, and two years for each felony firearm conviction. The trial court also ordered the petitioner to pay $70,000 in restitution to the victim. The petition's sole claim is that the trial court violated the petitioner's right to due process by admitting into evidence the victim's pre-trial and in-court identification of the petitioner. The respondent argues that state courts correctly adjudicated the claim and therefore the petition lacks merit.

I.

The petitioner's convictions arose from the shooting of Daniel Lehner during an attempted robbery in Ferndale, Michigan on July 30, 2003. The evidence at trial suggested that the petitioner observed the victim withdraw $3,600 in cash from the Dearborn Federal Credit Union, followed him

by car to Ferndale, and shot the victim four times in the front yard of an empty home before leaving the scene.  On August 14, 2003, Mr. Lehner was shown a photographic lineup by a Ferndale police officer  Department, and positively identified the petitioner as the man who shot him.

Before trial the petitioner moved to suppress the pretrial and in-court identification by Mr. Lehner, arguing that the photo array was unduly suggestive.  The trial judge held an evidentiary hearing.  Detective George Hartley of the Ferndale Police Department testified that after a composite drawing of the perpetrator was broadcast on television, he was contacted by Robert Haig, a Detroit police officer, who told him he believed he could identify the perpetrator from the sketch as Danny Smith.  Detective Hartley then ran Danny Smith's name through his database and obtained his driver's license photo from the Michigan Secretary of State.  Detective Hartley testified that he then contacted an investigator from the Secretary of State's office to request copies of Danny Smith's photograph along with the photographs of five others "similar in nature" that would "resemble Mr. Smith."  Hr'g Tr., July 21, 2005, at 16.  On August 14, 2003, Detective Hartley obtained the six photographs.  Of the photographs provided, Danny Smith was the only person wearing glasses.  That same day, Detective Hartley summoned the two eyewitnesses and Daniel Lehner to the police station to view the photographs.  Each of the eyewitnesses viewed the photographs independently, and each identified a photograph of someone other than the petitioner as the perpetrator.  However, Lehner identified the petitioner's photograph after wavering between that one and another photograph in the array.  After he identified the petitioner, Lehner was shown photographs taken from the bank surveillance camera earlier on the day of the crime.

During the hearing, the defendant's attorney acknowledged to the court that the victim testified that the perpetrator of the crime was not wearing glasses.  Upon taking testimony and

-2-

viewing the six photos used in the photographic array, the court determined that the array was not unduly suggestive and denied the defendant's motion to suppress.

At trial, Lehner, a contract painter, testified that on July 30, 2003 he entered the Dearborn Federal Credit Union to cash a check for approximately $3600. After cashing the check, Lehner drove to Ferndale, Michigan to prepare paint estimates for a realtor. After realizing he had passed the house, Lehner pulled into a driveway to turn around. At that point, he spotted a White Monte Carlo that had stopped in the middle of the street. Lehner waived the car by, pulled out of the driveway, and drove to the correct location, where he pulled into the driveway and parked his van. Lehner then stepped out of his van, walked up to the house, removed the key from the realtor lockbox, and opened the front door. Just before opening the door, he looked behind him to see a man standing behind his van in the driveway. The man approached him with his gun drawn. Lehner testified that he and the man faced each other, looked each other in the eyes, and he saw the man's face and entire body. Lehner then identified the petitioner as the man he saw that day. Lehner said the petitioner told him to go into the house, but Lehner jumped off the porch and started to run. He was shot four times while running away, between his shoulder blades, in his right thigh, and in his left elbow. A fourth bullet hit his wallet and did not penetrate his body.

The jury convicted the petitioner as charged. Following sentence, the petitioner filed a direct appeal raising three issues including the identification issue he asserts here. On December 19, 2006, the Michigan Court of Appeals affirmed the petitioner's convictions and sentences. *People v. Smith*, No. 264891, 2006 WL 3735656 (Mich. Ct. App. Dec. 19, 2006). His application for leave to appeal was denied by the Michigan Supreme Court on April 24, 2007. *People v. Smith*, 477 Mich. 1116, 729 N.W.2d 845 (2007).

-3-

In his petition before this Court, the petitioner raises just one ground for relief: that the trial court violated the petitioner's right to due process by admitting Daniel Lehner's pre-trial and in-court identification of the petitioner into evidence. The respondent argues that the petitioner has failed to show a violation of his federal constitutional rights.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the state court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating

that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .

> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id*. at 409. The Court has "explained that an unreasonable application of federal law is different from an incorrect application of federal law. Indeed, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable. This distinction creates a substantially higher threshold for obtaining relief than *de novo* review. AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, ---- U.S. ----, ----, 130 S. Ct. 1855, 1862 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither asked for elaboration of the foreperson's answers nor took any other

measures to confirm the foreperson's prediction that a unanimous verdict would not be reached")
(internal quotation marks and citations omitted); *see also Phillips v. Bradshaw*, 607 F.3d 199, 205
(6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d
587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*,
433 F.3d 483, 489 (6th Cir. 2006); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

The question whether a pre-trial identification procedure is unconstitutional is a mixed
question of law and fact.  *See Sumner v. Mata*, 455 U.S. 591, 597 & n.10 1982 (per curiam).

The Due Process Clause protects the accused against the introduction of evidence that results
from an unreliable identification obtained through unnecessarily suggestive procedures.  *Moore v.
Illinois*, 434 U.S. 220, 227 (1977).  A conviction based on identification testimony that follows a
pretrial photo identification violates the defendant's constitutional right to due process "if the
photographic identification procedure was so impermissibly suggestive as to give rise to a very
substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384
(1968).  It is the likelihood of misidentification that violates a defendant's due process right.  *Neil
v. Biggers*, 409 U.S. 188, 198 (1972).

The Supreme Court has identified five factors to consider in determining the reliability of
identification evidence: (1) the witness's opportunity to view the criminal at the time of the crime;
(2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior
description of the defendant; (4) the witness's level of certainty when identifying the suspect at the
confrontation; and (5) the length of time that has elapsed between the time and the confrontation.
*Id.* at 199-200.  A criminal defendant has the initial burden of proving that the identification
procedure was impermissibly suggestive.  If a defendant meets his burden, the burden then shifts to

the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. *See United States v. Wade*, 388 U.S. 218, 240 n.31 (1967); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicates that the identification is otherwise reliable, no due process violation has occurred. As long as there is not a substantial likelihood of misidentification, it is for the jury to determine the ultimate weight to be given to the identification. *See United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992); *Johnson*, 344 F. Supp. 2d at 1090.

In rejecting the petitioner's argument on direct appeal, the Michigan Court of Appeals ruled:

> After hearing [detective] Hartley's testimony and reviewing the array, the trial court determined that the pretrial identification was not unduly suggestive. In doing so, the trial judge observed that the perpetrator was not wearing glasses at the time of the crime and that, under such circumstances, one would expect a witnesses [sic] to pick the photograph of a person not wearing glasses. The trial court further observed that despite the fact that defendant was the only one wearing glasses, two of the three witnesses shown the array picked out a different individual. We agree that these facts, which are clearly supported by the record, are a strong indication that the pretrial identification was not impermissibly suggestive. . . . Accordingly, we conclude that the photo identification was not unduly suggestive. The trial court did not, therefore, clearly err in declining to suppress the victim's photo identification of defendant. Because we find no clear error in the trial court's decision in this regard, we need not consider whether the victim had an independent basis for his in-court identification.

*People v. Smith*, 2006 WL 3735656, at *2.

The Court cannot find that this determination contravened or unreasonably applied federal law. The only evidence on which the petitioner relies to support the argument that the photo array was suggestive is that his photograph depicted him wearing glasses. That feature distinguished his photograph from the others, but that sole fact does not render the array suggestive. The petitioner's eyewear is not a feature that one typically associates with criminality, and because the crime victim

-7-

believed that the perpetrator was *not* wearing glasses, the presence of that feature in the photograph more likely would tend to *exclude* the petitioner as a possible suspect.

Even if the photo array were unduly suggestive, the other factors weigh in favor of the reliability of the identification. The witness testified that he had ample opportunity to see the perpetrator at the scene when they were staring eye-to-eye before the victim jumped from the porch. Lehner testified that his attention was focused on the perpetrator at the time. Lehner also gave the police a description of the assailant from which a composite drawing was created. The rendering tended to depict the petitioner's face. Lehner did have some trouble choosing between the photos of the petitioner and another at the showing, but he settled on the petitioner's picture and did not waiver thereafter. Finally, the time lapse between the crime and the display was not unduly lengthy.

The Court finds that the petitioner has not shown that the state court's determination violated Supreme Court precedent or that a due process violation occurred.

III.

The Court concludes that the petitioner is not in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [dkt #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 31, 2011

-8-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 31, 2011

s/Deborah R. Tofil
DEBORAH R. TOFIL